UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Rebecca J., <br><br> Plaintiff, <br><br> v. <br><br> Frank Bisignano[1], Commissioner of Social Security, <br><br> Defendant. | Civil No. 3:24-CV-01818 (MEG) <br><br><br> July 29, 2025 |

**RULING ON PENDING MOTIONS**

Plaintiff, Rebecca J.[2], appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying her application for Title II Disability Insurance Benefits ("DIB"). ECF No. 1. She seeks an order reversing the Commissioner's decision and remanding the case for a new hearing or for calculation of benefits. ECF No. 1 at 2; ECF No. 22-1 at 14. The Commissioner seeks an order affirming that decision. ECF No. 25.

For the reasons that follow, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing is **DENIED (ECF No. 22)**

---

[1] When Plaintiff filed this action, she named the then-Acting Commissioner of the Social Security Administration, Leland Dudek, as the defendant. (Compl., ECF No. 1.) Acting Commissioner Dudek no longer serves in that office. His successor, Commissioner Frank Bisignano, is automatically substituted as the defendant pursuant to Fed. R. Civ. P. 25(d). The Clerk of the Court is respectfully requested to amend the caption of the case accordingly.

[2] Pursuant to D. Conn. Standing Order CTAO-21-01, Plaintiff will be identified solely by first name and last initial throughout this opinion.

1

and that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner is **GRANTED (ECF No. 25).**

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On September 4, 2021, Plaintiff filed an application for DIB benefits under Title II.[3] (R. 25, 102.) She claimed an inability to work due to "Crohn's Disease, Colitis". (R. 103.) Plaintiff alleged a disability onset date of June 2, 2016. (R. 103.) Her applications were denied initially on December 29, 2021, (R. 102-107), and upon reconsideration on September 15, 2022. (R. 108-113.)

On December 20, 2023, the ALJ issued an unfavorable decision. (R. 22-41.) ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims and ALJ I. K. Harrington's written decision follows that format. She found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2016. (R. 28.) At Step One, she found that Plaintiff had not engaged in substantial gainful activity since June 2, 2016, the alleged onset date. (R. 29.) At Step Two, she found that Plaintiff suffers from the severe impairments of Crohn's disease, cervicalgia, and myalgia.[4] (R. 29.) At Step Three, she concluded that "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*)." (R. 29.)

Accordingly, the ALJ determined that Plaintiff was not disabled from June 2, 2016, the alleged onset date, through June 30, 2016, the date last insured ("DLI"). (R. 33-34.)

---

[3]  Plaintiff's date last insured is June 30, 2016. (R. 102.)

[4]  The ALJ also reviewed the evidence of record regarding Plaintiff's cervicalgia and myalgia finding that "[o]verall, there [was] little evidence of limitations related to cervicalgia or myalgia, and . . . that these impairments did not more than minimally impact the claimant's ability to perform basic work activities." (R. 32.) Plaintiff does not challenge this finding.

2

## II. APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.* At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations. *Id.* At Step Four, the ALJ uses a residual functional capacity assessment to determine whether the claimant can perform any of his or her "past relevant work." *Id*. At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.* The claimant bears the burden of proof at Steps One through Four. *Id.* At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether

the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal citations and quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citations and quotation marks omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he or she has made a material legal error. In other words, district courts do not defer to the Commissioner's decision where "an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).

### III. DISCUSSION

Plaintiff argues that the ALJ erred in her Step Two finding that Plaintiff "did not have a severe impairment or combination of impairments" and by mischaracterizing the medical record and failing "to understand the context of [Plaintiff's] 'noncompliance.'" ECF No. 22-1 at 10-14.

4

The Commissioner disagrees and argues that the ALJ did not commit legal error and substantial evidence supports her conclusions. ECF No. 25.

### A. Step Two Error: Inadequate Evaluation of Impairments

The Court first addresses Plaintiff's challenge at Step Two. Here, Plaintiff argues that the "ALJ erred both in her evaluation of the evidence, and her conclusion that [Plaintiff's] most disabling medically determinable impairments were non-severe." ECF No. 22-1 at 10-11. She contends that the ALJ minimized her symptoms and objective findings in the medical record, and improperly assessed her noncompliance. ECF No. 22-1 at 11-14.

The Court disagrees.

*Evaluation of the Severity of Impairments*

To be eligible for disability benefits under the Social Security Act, a claimant must establish at Step Two that she has a severe medically determinable physical or mental impairment that has lasted or is expected to last for a period of at least 12 months, and significantly limits the claimant's ability to do "basic work activities." 20 C.F.R. § 416.920 ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled."); 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."). "Rather than defining the term "severe impairment," the regulations define a "non-severe impairment." *Larkin v. Astrue*, No. 3:12-CV-0035 WIG, 2013 WL 4647243, at *5 (D. Conn. Apr. 29, 2013), *report and recommendation adopted in part, rejected in part*, No. 3:12-CV-0035 MPS, 2013 WL 4647229 (D. Conn. Aug. 29, 2013). "An

impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a); *see also* SSR 96–3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996); *Gennings v. Comm'r of Soc. Sec.,* No. 18-CV-1235-FPG, 2020 WL 792250, at *4 (W.D.N.Y. Feb. 18, 2020) ("An impairment is nonsevere if the medical evidence establishes a slight abnormality that would only minimally affect the claimant's ability to work."). Plaintiff bears the burden of proof at Step Two. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

However, "[t]he substantial evidence standard means once an ALJ finds facts, [a reviewing court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise."* *Brault*, 683 F.3d at 448 (emphasis in original). This case does not present such a situation. Upon review, the Court finds that the ALJ's determination at Step Two is supported by the medical evidence of record. For the reasons that follow, the ALJ did not err in assessing the evidence and her determination is supported by substantial evidence.

***Crohn's Disease***

The ALJ reviewed the evidence of record regarding Plaintiff's Crohn's disease. (R. 31-32.) At the outset, she acknowledged Plaintiff's testimony that she could not engage in full-time employment due to her digestive issues that caused her to use the bathroom approximately ten times a day for potentially up to an hour per trip. (R. 30.) The ALJ also noted that Plaintiff testified that she graduated from college in May 2016; completed an accelerated program for a teaching certificate from September 2017 through May 2018; worked as a substitute teacher beginning in August 2019; and engaged in substantial gainful activity from the fourth quarter, 2020 through the second quarter, 2021. (R. 3, 32.) She concluded that "claimant's academic pursuits, both before

6

and after the date last insured, and her work at SGA levels discount[ed] her allegations of disability since the date last insured." (R. 32.)

The ALJ summarized and discussed the medical evidence dated before Plaintiff's June 30, 2016, DLI and three months post-DLI.[5] (R. 31-32.) She found that "the records from the relevant period showed a clear pattern of issues with noncompliance but improvement in symptoms when the claimant took medication." (R. 32.) Substantial evidence supports her conclusion. The ALJ accurately summarized hospital treatment records and records from her GI specialist, Dr. Amy Smithline, showing an unwillingness to follow medical advice, appear for follow-up appointments and refusing to take prescribed medication. (R. 31 (citing R. 1411 (January 9, 2016, Stamford Hospital-Plaintiff reported not taking prescription medications for Crohn's disease and not seeing her GI doctor during this bout of illness)); (citing R. 408-10 (January 13, 2016, Dr. Smithline noted that the MRI enterography showed significant small bowel disease and noting that "[m]any attempts to contact her were made." "We recently sent her a certified letter to return." The doctor noted that Plaintiff was put on Prednisone and was "still very symptomatic" "[a]dvised increasing steroids but she does not want to.")); (citing R. 411-12 (March 31, 2016, Dr. Smithline noted that Plaintiff was "advised to start Humira a long time ago, very noncompliant with medications because of fear of medications and generally wanted to treat herself homeopathically. She does understand that she needs medication and will start them in 1 month when she graduates from

---

[5] At the hearing the ALJ noted for the record that although there was over 11,000 pages of medical evidence, the bulk of the evidence was five years after the date last insured. (R. 54.) "The period that we're really looking at is really for those 28 days in June of 2016" from the alleged onset date, June 2, 2016 to the date last insured June 30, 2016. (*Id.*) "So, you have to show a disability prior to June 30, 2016 . . . the bulk of the records which account for 10,000 pages of medical evidence are dated really five years after the date last insured. So, I just want to make sure that Counsel is aware, and the focus of this testimony is really prior to the date last insured[.]" (R. 54-55.)

7

school." In an addendum, the doctor stated that she "made it very clear to [Plaintiff] that she continues to put herself at risk of obstruction or worsening of the colitis and that she could ultimately need surgery or an ostomy etc. She is very stubborn but is of sound mind and refuses to start a biologic at this time until she finishes school. She will call in 2 weeks sooner if symptoms worsen.")); (R. 1358-1362 (April 12-19, 2016, Stamford Hospital-noted that Plaintiff reported she stopped taking medication in 2014 and "tried Naturopathic options for almost [two] years without result." She was given Humira during the hospitalization and discharged with no restrictions "stable with improvement.")); (R. 447-48 (June 8, 2016, her GI provider noted that Plaintiff was status post-Humira/steroids and was "doing well.").) The ALJ reviewed the May 31, 2016, June 13, and 20, 2016 treatment records from Plaintiff's Osteopath Dr. Michael Geis, noting that the records continue to reflect good response to treatment. (R. 31 (citing R. 11,424, 11,422, 11,421).)

The ALJ also considered the treatment notes from September 21, 2016, approximately three months after the dated last insured expired, when Plaintiff returned to her Gastroenterologist Dr. Smithline. (R. 31-32 (citing R. 413-415).) The doctor noted, "bad disease, and noncompliance is the biggest issue." (R. 32 (citing R. 415).) She stated that Plaintiff was admitted to the hospital in April because of escalating colitis, where she received IV steroids and was "started on Humira which had been advised since I had [seen] her last October 2015. She improved and her diarrhea improved and she was told to follow up in the office to manage her, add immunomodulator, do a colonoscopy and follow her and she never showed up." (R. 413.) The doctor reported that Plaintiff "admits that she stopped Humira, she did not take any steroids. She did well until August 2016 when her colitis symptoms recurred and now they are getting bad again." (R. 32 (citing R. 413).) On examination, the doctor noted she was "in no acute distress, thin, but looks ok", "normal abdomen" and "normal gait and station." (R. 32 (citing R. 414).) Plaintiff treated Homeopathically

8

and the disease progressed. (R. 415.) The ALJ observed that Plaintiff's doctor repeated that "[n]oncompliance has been biggest issue and she comes in when she feels worse." (R. 32 (citing R. 415).) Plaintiff's doctor expressed ongoing efforts to get Plaintiff "to truly understand the severity and nature of her disease and her choices she is making[.]"[6] (R. 415.)

Here, the ALJ demonstrated with "sufficient specificity" that she reviewed the medical evidence of record, applied the correct legal standard and her Step Two finding is supported by substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (An ALJ "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence.").

*Noncompliance*

Plaintiff argues that the ALJ erred in disregarding her explanation about her noncompliance. ECF No. 22-1 at 12-14. The Court disagrees. Here, the ALJ properly applied the two step analysis. First, the ALJ found that plaintiff's medically determinable impairments could be expected to cause the alleged symptoms. (R. 30.) Second, the ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent." (*Id.*) The ALJ determined that "[t]he medical records from the relevant period are not entirely consistent with the claimant's allegations of disabling impairment in that they do

---

[6]   The Commissioner pointed out that in March 2017, nearly eight months after the DLI, Dr. Smithline continued to record Plaintiff's noncompliance with recommended treatment stating,

> [Plaintiff] is refusing antibiotics or any chrons [*sic*] medications . . . she does understand the implications that by not taking medication for her [C]rohns of the small bowel she will likely require a resection of the small bowel and she is making the situation worse by not getting treated. She is aware of this. She gets lost to follow up for 6 months to 9 months until something acute happens that brings her back in.

(R. 418.)

9

not establish that the claimant's Crohn's disease more than minimally impacted her ability to perform basic work activities." (R. 31.) "When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole." *Lee v. Colvin*, No. 13-CV-1151-JTC, 2015 WL 3505791, at *6 (W.D.N.Y. June 3, 2015). "It is the function of the Secretary. . . , to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Hum. Servs.,* 705 F.2d 638, 642 (2d Cir. 1983) (internal citations omitted).

The medical evidence shows that Plaintiff was not compliant with treatment. The ALJ accurately determined that "the records from the relevant period show a clear pattern of issues with noncompliance but improvement in symptoms when the claimant took medication." (R. 32.) A claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as proscribed." *Weed Covey v. Colvin*, 96 F. Supp. 3d 14, 33 (W.D.N.Y. 2015) (quoting SSR 96–7p, 1996 WL 372186, at *7 (July 2, 1996)). Noncompliance with treatment is "a permissible consideration for the ALJ in determining whether Plaintiff's symptoms were as debilitating as she alleged." *Paul v. Comm'r of Soc. Sec.,* No. 18-CV-1413, 2020 WL 3496293, at *4 (W.D.N.Y. June 29, 2020); *see Michelle K. v. Comm'r of Soc. Sec.,* No. 1:21-CV-1295-DB, 2024 WL 1856857, at *13 (W.D.N.Y. Apr. 29, 2024) ("[T]he ALJ reasonably found that Plaintiff's repeated non-compliance with treatment undermined her allegation of disability."); *see also* SSR 16-3p, 2017 WL 5180304 at *9 (explaining that if the individual fails to follow prescribed treatment that might improve symptoms, the ALJ may find that the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence in the record);

10

*Lee,* 2015 WL 3505791, at *6 ("The ALJ was permitted to consider plaintiff's noncompliance with treatment as a factor weighing against [her] credibility."); *Valentin v. Colvin*, No. 3:16-CV-245 (MPS), 2017 WL 923903, at *5 (D. Conn. Mar. 8, 2017) ("The ALJ considered the clinical evidence and treatment notes that stated that the [claimant] has failed to follow treatment recommendations, as she is allowed to do in assessing credibility."); *Weed Covey*, 96 F. Supp. 3d at 33 ("The ALJ's finding that Plaintiff's credibility was diminished by her failure to regularly attend treatment sessions was supported by ample cancellation and no-show notes in Plaintiff's medical record."); *Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *6 (W.D.N.Y. June 30, 2017) (finding that an ALJ may properly consider the lack of treatment as a factor in the discrediting a claimant's allegations of disability) (citing cases); *Jackson v. Barnhart,* No. 06-cv-0213, 2008 WL 1848624, at *11 (W.D.N.Y. Apr. 23, 2008) (finding that plaintiff's missed appointments with her counselors and failure to adhere to medication regimen weighed against plaintiff's credibility); 20 C.F.R. § 416.930(b) ("When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled.").

In addition to relying on the foregoing medical evidence, the ALJ properly considered Plaintiff's statements regarding her academic pursuits and work history in determining the severity of her disability. (R. 30, 32.) The ALJ noted Plaintiff's reports "that she was able to graduate from college at the University of Connecticut in May 2016," "complete an accelerated program for a teaching certificate from September 2017 through May 2018," work part-time as a tutor and "engage[] in substantial gainful activity (SGA) working as a teacher" in determining her

credibility. [7] (R. 30, 32.) *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Further, "[b]ecause symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . as to whether [a claimant is] disabled." 20 C.F.R. § 404.1529(c)(3). The ALJ did not err when considering the evidence of record and Plaintiff's testimony when determining the nature and severity of her symptoms under the regulations. *See Michelle K.,* 2024 WL 1856857, at *13 (citing *Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir. 2008) (while claimant's work during the relevant period did not meet the threshold for substantial gainful activity, he worked at levels consistent with light work)); *Cabrero-Gonzalez v. Colvin*, No. 13-CV-6184-FPG, 2014 WL 7359027, at *19-20 (W.D.N.Y. Dec. 23, 2014) (finding that the ALJ appropriately discredited claimant's allegations, in part, because he worked after his alleged disability onset date); *see also Silva v. Saul*, No. 18-cv-6206 (CJS), 2019 WL 2569595, at *5 (W.D.N.Y. June 21, 2019) (collecting cases) (explaining that an "ALJ may also properly consider a claimant's demonstrated ability to work part-time during the relevant period as evidence that the claimant is not completely disabled."). "It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of the witnesses,' including the claimant." *Cabrero-Gonzalez,* 2014 WL 7359027, at *20 (quoting *Carroll v. Sec'y of Health &*

---

[7]   Plaintiff testified that she worked from August 30, 2019 through June 30, 2021, at SGA levels and completed an ARC State of Connecticut teaching certificate program in May 2018. (R. 67-68, 77 (enrollment in the certificate program was from September 2017 through May 2018).) She completed her undergraduate degree in May 2016, within four years. (R. 69.)

*Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)); see *Veino*, 312 F.3d at 588. The Court finds no error.

Accordingly, the ALJ did not err in assessing the evidence and her determination is supported by substantial evidence.

### *Mischaracterization of the Medical Record*

Throughout her brief, Plaintiff asserts that the ALJ should have weighed the evidence differently, or "failed to understand the context" of her noncompliance or "misunderstood" the contents of the medical records. ECF No. 22-1 at 10-14. Plaintiff "argues for evaluating specific evidence differently and finds fault with specific aspects of the ALJ's reasoning, but she does not demonstrate any legal error or meet the demanding standard for showing that substantial evidence does not support the ALJ's conclusion." *Spottswood v. Kijakazi*, No. 23-54-CV, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (summary order); *see Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order) (Claimant's "disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also Brault*, 683 F.3d at 448 ("The 'substantial evidence' standard is 'a very deferential standard of review—even more so than the 'clearly erroneous' standard.'"). The Commissioner argues that the Plaintiff has failed to meet her burden of showing—based on all the evidence—that no "reasonable fact finder would *have to conclude otherwise."* ECF No. 25 at 9 (quoting *Brault,* 683 F.3d at 448) (emphasis in original). *See Spottswood*, 2024 WL 89635, at *2 ("[O]nce an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise. . . . We are not to reweigh evidence and must uphold a determination when evidence is susceptible to more than one rational interpretation.") (citation and quotation marks omitted). The Court agrees. Indeed, "whether there is substantial evidence supporting [Plaintiff's] view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision.*" *Bonet ex rel. T.B. v. Colvin*, 523 F.

13

App'x 58, 59 (2d Cir. 2013) (emphasis in original); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149. As set forth above, the ALJ demonstrated with sufficient specificity that she reviewed the medical evidence of record, applied the correct legal standard and her findings are supported by substantial evidence.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing is **DENIED (ECF No. 22)** and that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner is **GRANTED (ECF No. 25).**

The Clerk of the Court will enter judgment in favor of Defendant.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. ECF No. 14. Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). It is so ordered.

*/s/ Maria E. Garcia, USMJ*
Hon. Maria E. Garcia
United States Magistrate Judge